IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FEDERATED BANK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | FILE NO. |
| SILVERTON BRIDGE BANK, | § | |
| NATIONAL ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |

### VERIFIED COMPLAINT FOR
### BREACH OF CONTRACT, EQUITABLE RELIEF, AND FRAUD

COMES NOW Plaintiff Federated Bank (hereinafter "Federated") and hereby files this Verified Complaint, respectfully showing this Honorable Court as Follows:

### JURISDICTION AND VENUE

1.

Federated is a bank corporation organized and existing under the laws of the State of Illinois, having its principal place of business located at 107 N. Chestnut, PO Box B, Onarga, Illinois 60955.

2.

Defendant Silverton Bridge Bank, National Association. (hereinafter "SBB") is a bridge bank organized under the laws of the United States of America, having its principal place of business at 3284 Northside Parkway NW, Atlanta, Georgia 30327, and is thus subject to the jurisdiction of this Court.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as SBB resides in the judicial district of this Court.   Defendant may be served by serving its Chief Executive Officer, Gayle Earls, at 3284 Northside Parkway, NW, Atlanta, Georgia 30327.

3.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and Federated and SBB are citizens of different states.

## STATEMENT OF FACTS

### Background

4.

On or about December 12, 2006, The Bankers Bank ("TBB") loaned J. Michael Womble the principal amount of Three Million Fifty Seven Thousand Five Hundred and Ninety Seven Dollars ($3,057,597.00), evidenced by a

Promissory Note dated December 13, 2006, Loan No. 4053161101 (the "Note").

A true and correct copy of the Note is attached hereto as Exhibit "1."

5.

The Note was secured by 5,091 shares of FMCB Holdings, Inc., Certificate

Number 128 and 39,222 shares of FMCB Holdings, Inc., Certificate Number 211,

(collectively "Collateral"), as evidenced by, among other things, that certain

Commercial Pledge Agreement dated December 12, 2006 (the "Pledge

Agreement"). A true and correct copy of the Pledge Agreement is attached hereto

as Exhibit "2."

6.

In or around the latter part of the year 2007, TBB solicited bids from community banks, including Federated, to purchase participation interests in certain loans, including the Note. A true and correct copy of TBB's Bank Director and Officer Stock Loan Participations (the "Solicitation") is attached hereto as Exhibit "3."

7.

The Solicitation references the Note as SL # 4 GA, and indicates that the collateral for the Note is 76,400 shares of bank stock.

8.

TBB represented to Federated that the Collateral consisted of 76,400 shares of bank stock; however, TBB failed to disclose that the 76,400 shares consisted of the 44,313 shares pledged pursuant to the Pledge Agreement, and an additional 32,087 shares pledged pursuant to another loan that was cross-collateralized and cross-defaulted with the Note, that TBB had in its portfolio with Mr. Womble, or an affiliate of Mr. Womble's.

9.

Additionally, TBB represented to Federated that the Collateral consisted of community bank stock, rather than holding company stock.

10.

On or about December 18, 2007, TBB and Federated entered into a Participation Agreement (the "First Participation"), whereby TBB sold Federated a 32.7054219% interest in the Note, for the total amount of One Million Dollars ($1,000,000.00). A true and correct copy of the First Participation is attached hereto as Exhibit "4."

11.

The First Participation provides that the Note is secured by 76,400 shares of bank stock.

12.

Upon information and belief, in or about late 2007, TBB converted from a Georgia state bank to a national association. Shortly thereafter, TBB merged and changed its name to Silverton Bank, N.A. ("Silverton").

13.

Upon information and belief, by virtue of merger, Silverton succeeded to all of TBB's rights, interest, and obligations under the Note, Pledge Agreement, and Participation Agreement.

14.

On or about March 28, 2008, Federated and Silverton entered into a Participation Agreement (the "Second Participation", collectively with the Note, Pledge Agreement, Solicitation, and First Participation the "Participation"), whereby TBB sold Federated a 32.7054219% interest in the Note, for the total amount of One Million Dollars ($1,000,000.00). A true and correct copy of the Second Participation is attached hereto as Exhibit "5."

15.

Upon information and belief, on May 1, 2009, Silverton failed and the Federal Deposit Insurance Corporation was appointed Receiver of Silverton ("FDIC-R").

16.

Upon information and belief, on May 1, 2009, the Office of the Comptroller of the Currency ("OCC") approved the application to charter SBB as a national association, pursuant to 12 U.S.C. § 1821(n).

17.

Upon information and belief, on May 1, 2009, FDIC-R and SBB entered into an Insured Deposit Purchase and Assumption Agreement (the "P&A Agreement"), whereby SBB assumed and acquired, among other things, Silverton's rights,

interest, and obligations under the Participation.   A true and correct copy of the P&A Agreement is attached hereto as Exhibit "6."

## Loan Default

18.

On or about October 22, 2008, Silverton increased the risk rating on the Note from 030, or average quality, to a 080, which, upon information and belief, indicates that the Note was non-accrual.   A true and correct copy of the Silverton Bank Risk Rating/Status Change Form (the "October 2008 Status Form") is attached hereto as Exhibit "7."

19.

The October 2008 Status Form, for the first time, indicated that the Note was secured by a total of 71,613 shares of bank stock, rather than the 76,400 shares as set forth in the Participation Agreement.

20.

Pursuant to the terms of the Note, all amounts due and owing were fully payable on December 13, 2008, the date the Note matured.

21.

Neither Mr. Womble, nor anyone on his behalf, tendered payment in full to Silverton upon maturity of the Note.

22.

Thus, on December 13, 2008, the entire amount of the Note, then outstanding, was fully due and payable, and Mr. Womble had failed to tender payment. Such failure to tender payment constituted a default under the terms of the Note and Pledge Agreement.

### Silverton's and SBB's Failures, Inactions, and Defaults

23.

Upon Mr. Womble's default, Silverton was entitled to, among other things, file an action to collect the indebtedness and foreclose on its security-interest in the Collateral and dispose of the Collateral in a commercially reasonable manner.

24.

Pursuant to the terms of the Participation Agreement, Silverton was obligated to take commercially reasonable steps to protect its, and Federated's, interest in the Note and the Collateral.

25.

Such commercially reasonable steps could include, but is not limited to, filing an action against Mr. Womble and the guarantors on the Note and disposition of the Collateral.

26.

According to Silverton, the market value of the 71,613 shares of stock, as of June 30, 2008, was $6,588,396.

27.

Had Silverton properly perfected its security-interest in the total of 76,400 shares of stock, as set forth in the Solicitation and the Participation, the market value of the Collateral would have been $7,028,800.

28.

Therefore, according to Silverton's own valuation of the Collateral, disposition of the Collateral would have been more than enough to satisfy the Note.

29.

However, despite the opportunity to dispose of the Collateral, Silverton failed and refused to take any meaningful steps to market and sell the Collateral.

30.

Additionally, since SBB acquired Silverton's duties and obligations under the Participation, SBB has similarly failed and refused to take any meaningful steps to market and sell the Collateral.

31.

In addition to the failures to properly manage the Participation, Silverton and SBB have failed and refused to provide timely updates to Federated and provide Federated with sufficient information for evaluation of the Participation.

32.

SBB has similarly failed and refused to cooperate with Federated, by among other things, refusing to provide Federated with updated information upon request.

33.

Silverton's and SBB's actions and inactions as set forth herein have caused considerable damage to Federated.

34.

Upon information and belief, Silverton's and SBB's actions and inactions and have caused the value of the Collateral to diminish, have allowed Mr. Womble and the guarantor to deplete their assets, and have substantially decreased the likelihood that Federated would be repaid for its interest in the Participation.

35.

On or about May 14, 2010, Federated's counsel sent notice to SBB that SBB was in default of its obligations under the Participation and demanded that SBB immediately tender payment in full to Federated for its interest in the Participation.

36.

To date, SBB has failed and refused to respond to Federated's demand or take any other meaningful action to collect on the indebtedness.

## COUNT I
## BREACH OF CONTRACT

37.

Federated incorporates the allegations contained in Paragraphs 1 through 36 as if set forth verbatim herein.

38.

Silverton and SBB had an obligation to administer the Participation in a commercially reasonable manner.

39.

Silverton and SBB had an obligation to promptly notify Federated of circumstances which would increase the likelihood that the indebtedness would not be paid when due.

40.

Silverton and SBB had an obligation to cooperate with Federated's reasonable requests for additional information concerning Borrower, the Collateral, and the Participation.

41.

Upon information and belief, Silverton and SBB failed to administer the Participation in a commercially reasonable manner, because, among other things, Silverton and SBB have failed and refused to take any steps to collect the indebtedness from Mr. Womble and failed and refused to take any steps to collect upon the Collateral.

42.

As a direct and proximate result of Silverton and SBB's failures and breaches, Federated has been damaged and is entitled to collect from SBB an amount not less than $1,000,000.00.

## COUNT II
## EQUITABLE MODIFICATION OF CONTRACT

43.

Federated incorporates the allegations contained in Paragraphs 1 through 42 as if set forth verbatim herein.

44.

Pursuant to the terms of the Participation, SBB has the sole authority to take actions to collect the indebtedness and/or foreclose upon the Collateral.

45.

As set forth herein, SBB has failed and refused to take any action to collect the indebtedness and/or foreclose upon the Collateral, despite the loan maturing on December 13, 2008, and the borrower failing and refusing to tender payment to SBB.

46.

Without an equitable modification of the Participation, Federated cannot take any action and is left helpless.

47.

Additionally, Federated has repeatedly requested SBB to provide updated information to Federated and to provide full disclosure of all facts that affect the ability to collect the indebtedness.  However, despite those reasonable requested, SBB has steadfastly failed and refused to do so.

48.

Accordingly, equity requires that this Court modify the Participation so as to afford Federated all rights under the Participation to administer and service the indebtedness, including, but not limited to the right to pursue collection of the underlying indebtedness, filing an action against the borrower, and foreclosure upon the Collateral.

## COUNT III
## EQUITABLE PARTITION

### 49.

Federated incorporates the allegations contained in Paragraphs 1 through 48 as if set forth verbatim herein.

### 50.

Pursuant to the Participation, Federated purchased 32.7054219% of the Note and obtained an equal percentage of the Collateral.

### 51.

As set forth herein, SBB has failed and refused to take any steps to collect on the indebtedness and/or foreclose on the Collateral.

### 52.

As SBB has failed and refused to take such steps, Federated's hands are tied and it cannot take any steps to collect on the indebtedness and/or foreclose on the Collateral.

### 53.

Upon information and belief, the Collateral has value, is marketable, and can provide an avenue for repayment of the indebtedness.

54.

Accordingly, equity demands that the security-interest in the Collateral be partitioned in the same percentage rates as the participation interest, so that Federated can pursue all remedies available to it against its percentage interest in the Collateral.

55.

As Federated has 32.7054219% of the indebtedness, equity demands that Federated receive 32.7054219% of the Collateral, or 24,987 shares.

## COUNT IV
## SPECIFIC PERFORMANCE

56.

Federated incorporates the allegations contained in Paragraphs 1 through 55 as if set forth verbatim herein.

57.

As set forth herein, SBB has failed and refused to take commercially reasonable steps to collect the indebtedness and/or foreclose on the Collateral.

58.

As a result of SBB's failures, Federated has been damaged in the amount of its interest in the Participation, as a result of the decreased likelihood that the borrower will fail to pay, and the likely decreased value of the Collateral.

59.

Pursuant to the terms of the Participation, Federated has a right to demand specific performance of SBB's obligations under the Participation.

60.

Accordingly, Federated requests that this Court enter an order compelling SBB to immediately take steps to collect on the indebtedness, including, but not limited to, filing an action against the borrower and all guarantors and foreclosure of the Collateral.

**COUNT V**
**FRAUD**

61.

Federated incorporates the allegations contained in Paragraphs 1 through 60 as if set forth verbatim herein.

62.

TBB and Silverton provided the Solicitation to Federated for the purpose of inducing Federated to enter into the Participation.

63.

The Solicitation represented, among other things, that the indebtedness was to be secured by 76,400 shares of bank stock.

64.

The type and amount of collateral to be pledged to secure payment of the indebtedness was a material term.

65.

Federated reasonably relied upon TBB and Silverton's representations and entered into the Participation.

66.

At the time TBB and Silverton made such representations, TBB and Silverton knew or should have known that the collateral being pledged to secure the indebtedness did not consist of 76,400 share of bank stock.

67.

As a result of TBB and Silverton's misrepresentations, Federated has suffered considerable consequential and compensatory damages, in an amount to be determined by the enlightened conscience of a jury.

## COUNT VI
## ATTORNEYS' FEES AND EXPENSES OF LITIGATION

### 68.

Federated incorporates the allegations contained in Paragraphs 1 through 67 as if set forth verbatim herein.

### 69.

SBB's actions as set forth herein constitute bad faith and stubbornly litigious behavior, which authorizes the imposition of attorneys' fees.   Accordingly, Federated hereby requests judgment against SBB in an amount equal to its reasonable attorneys' fees and expenses incurred in the prosecution of this action.

WHEREFORE, Federated respectfully prays that this Court order that:

(a) process issue according to law;

(b) judgment be entered against SBB in an amount not less than $1,000,000.00, as to be determined by the enlightened conscience of a jury;

(c) the Participation be modified to provide that Federated may administer and service the indebtedness as the originating bank;

(d) the Collateral be partitioned so to provide that Federated has the exclusive right and interest in 24,987 of the shares pledged as collateral;

(e) SBB immediately take all steps available to it in law or in equity to collect the indebtedness and/or foreclose on the Collateral;

(f) all other relief the Court deems just and proper.

Respectfully submitted this 23 day of July, 2010.

BRET T. THRASHER
Georgia State Bar No. 710682
AARON M. KAPPLER
Georgia State Bar No. 272533

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia  30092
770-925-0111; fax 770-925-8597
akappler@tokn.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel certifies that the size and style of type used in the foregoing

document is Times New Roman 14 point.

s/   Aaron M. Kappler
AARON M. KAPPLER
Georgia State Bar No. 272533

For the firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092
(770) 925-0111
Attorneys for Plaintiff

671288_1

## VERIFICATION

PERSONALLY appeared before the undersigned attesting officer, duly authorized by law to administer oaths, the below-named individual, who, after being first duly sworn, deposes and states that the facts contained in the within and foregoing **VERIFIED COMPLAINT** are true and correct to the best of his knowledge and belief.

_____
Matt J. Clark
President & CEO
Federated Bank

Sworn to and subscribed before
me this _14th_ day
of July, 2010.

_____
NOTARY PUBLIC

```
********************************
*      "OFFICIAL SEAL"         *
*  JACQUELINE D. WALRAVEN      *
*   Notary Public, State of Illinois  *
*  My Commission Expires 07/31/10  *
********************************
```

675589_1